UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

COOS COUNTY, a county organized under
the laws of Oregon

11-6127-TC

Plaintiff,

OPINION AND ORDER

v.

KIMBERLY-CLARK CORPORATION, a
Delaware corporation,

Defendant.

COFFIN, Magistrate Judge:

Millions of years ago, streams discharged sediment eroded from the Klamath mountains, forming an ancient beach which runs roughly parallel to the present-day coastline in Coos County, Oregon. Continual wave action drove the sediment to the shore where heavy minerals settled, eventually creating an alluvial deposit. Over the intervening millennia between two to sixty feet of overburden covered the ancient beach. In 2000, Coos County purchased the surface estate of the real property that now covers the ancient beach. Then, in 2005, Kimberly-Clark acquired a deed reservation to "all oil, gas and mineral rights on, in and under" the property. The County filed this

Page 1 - OPINION AND ORDER

action seeking a declaration of the rights to the minerals between Coos County and Kimberly-Clark relative to a reservation of "all oil, gas and minerals" in a 1963 deed. (#1-1). I held oral argument on the parties' cross motions for summary judgment (#s 13 and 17) on February 27, 2012. The parties have consented to magistrate judge jurisdiction, and for the reasons set forth below, I deny the County's motion and grant Kimberly-Clark's.

## Background

In 1963, Scott Paper sold the surface estate on all of its Oregon timber land–including the subject property, to Georgia-Pacific Corporation. The deed contained the following reservation:

> RESERVING, HOWEVER, unto Grantor [Scott Paper], its successors and assigns, all oil, gas and mineral rights on, in and under the real property so described in said Exhibit A..., together with the right of ingress and egress for the purpose of exploring for, mining, and producing any and all such oil, gas and minerals.

(#18-14, ex. Q, p. 316).

Almost forty years later, in 2000, the County acquired title to the surface estate of the subject property as part of a land exchange with one of Georgia-Pacific's subsidiaries. Kimberly-Clark purchased all of Scott Paper's outstanding stock and then, in 2005 liquidated the company under a liquidation plan that transferred all of Scott Paper's assets, including the 1963 deed reservation, to Kimberly-Clark.

The parties agree that Coos-County holds the right to the subject property's surface estate and that Kimberly-Clark holds a reservation to "all oil, gas and minerals." The parties disagree, however, about the construction of the reservation of "all oil, gas and minerals" and about Kimberly-Clark's rights and obligations under the reservation. The County, which uses its surface estate for timber operations, contends that the deed reserves only oil, gas and other minerals of similar nature.

Page 2 - OPINION AND ORDER

According to the County, the deed did not reserve the rights to geothermal heat or ores of minerals such as carbon dioxide, coal, iron, gas occurring in coal formations, industrial minerals, metallic minerals aggregates, sand gravel, clay and other similar earth materials, uranium, and rock or rock of a unique character. The County also argues that the reservation does not allow Kimberly-Clark to destroy the surface estate when extracting reserved substances. Kimberly-Clark leases its oil, gas and mineral rights to third parties and argues that the reservation's language unambiguously gives it ownership of and the right to mine (or lease for mining) all minerals without exception. Kimberly-Clark further asserts that the reservation's express language grants it the right to extract minerals by surface mining.

The parties differing interpretations of the 1963 deed reservation came to a head in 2010 when Kimberly-Clark granted a mining company the right explore for and extract chromite (and other specific minerals) from on or under the property. The chromite lies at least fifteen feet below the surface and must be extracted through surface mining. Surface mining would destroy a portion of the surface estate, including the County's timber stands on that portion.[1]

### Standard

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby,

---

[1] Although irrelevant to the construction of the reservation, Kimberly-Clark represents that the contemplated mining will not require complete or permanent destruction of the surface estate. Kimberly-Clark estimates that the "productive zone" will cover 140 acres of the 465 acre subject property. (#24, p. 20, n. 18).

Page 3 - OPINION AND ORDER

Inc., 477 U.S. 242, 247-48 (1986). The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. Id.

This is a diversity case, and a federal court exercising diversity jurisdiction must apply the law of the forum state. Klaxon Co. v. Stenton Elec. Co., 313 U.S. 487, 496 (1941). In Oregon, whether a contract or deed is ambiguous is a question of law. Yogman v. Parrot, 325 Or. 358, 361 (1997); James B. House Living Trust v. Thompson, 230 Or. App. 595, 600 (2009). When construing an instrument, the court first examines "the text of the disputed provision, in the context of the document as a whole." Yogman, 325 Or. at 361. If the provision is clear, the analysis is over. Id. at 362. If, however, the provision is ambiguous, the court must examine the extrinsic evidence of the contracting parties' intent. Id. If examination of extrinsic evidence does not resolve the ambiguity, the court must rely on "appropriate maxims of construction." Id.

## Discussion

The first step to resolving the parties' differing interpretation of the reservation is to examine the text in light of the document as a whole. Yogman, 325 Or. at 361. Here, the text conveys real property but reserves the right to "all oil, gas and mineral rights on, in and under the real property...together with the right of ingress and egress for the purpose of exploring for, mining, and producing any and all such oil gas and minerals." (#18-14, ex. Q, p. 316). According to the County, the reservation is not clear because: (1) the definition of "minerals" is so broad, the reservation of "all minerals" is "inherently ambiguous; and reading the terms in context with the preceding terms

"oil and gas" adds to the reservation's ambiguity. (#14, p. 14). The County claims that among the many plausible interpretations of "all minerals" is "substances similar in nature to oil and gas." (Id.) Kimberly-Clark asserts that the reservation is clear, pointing out that a broad definition does not equal an ambiguous definition and that, read in context with the text of the reservation, "minerals" could only mean all minerals at whatever depth and location. I agree with Kimberly-Clark.

Oregon law directs me to construe the deed reservation by "simply...ascertain[ing] and declar[ing] what is and giving terms their primary and general acceptation." Or. Rev. Stat. §§ 42.230 and 42.250. A generally accepted definition of "mineral" is:

> any of a class of substances occurring in nature, usually comprising inorganic substances, as quartz or feldspar, of definite chemical composition and usually of definite crystal structure, but sometimes also including rocks formed by these substances as well as certain natural products of organic origin, as asphalt or coal. [or]
> a substance obtained by mining, as ore.

See, http://dictionary.reference.com/browse/minerals. Oregon law defines "minerals" as including "any and all mineral products, metallic and nonmetallic, solid, liquid or gaseous, and mineral waters of all kinds." Or. Rev. Stat. §516.010. Oregon's statutory definition is instructive. It does not limit "mineral" to liquid and gaseous products, but instead, includes "all mineral products" including any minerals which might be liquid, gas and mineral waters. Id. (emphasis added). Moreover, as Kimberly-Clark notes, the substances at issue here—chromite, zircon, ilmenite, and garnet, are defined by Webster's dictionary as "minerals." (#18, p.18-19).

The County's argument complicates construction of the reservation, requiring verbal contortions to conclude that a reservation of "all oil, gas and mineral rights" really means "all oil, gas and minerals that are similar in nature to oil and gas." The case the County relies on to establish

Page 5 - OPINION AND ORDER

that Oregon courts have concluded that the "term 'minerals' is not subject to exact definition and that it has a variety of meanings...," Whittle v. Wolff, 249 Or. 217 (1968), is easily distinguished from this case. Whittle considered whether the "reservation of 'subsurface rights' or its equivalent, a reservation of mineral rights, embrace[d] sand and gravel." Here, the question is whether the reservation of "all...mineral rights" includes chromite and other substances commonly defined as minerals. Thus, Whittle's conclusion that '[i]n some contexts sand and gravel are treated as minerals" is not instructive here. Adopting the County's proffered construction would not only ignore the common use of the term "minerals" but also abrogate Oregon's statutory definition of the term. In contrast, Kimberly-Clark's construction is simple and mirrors "what is" in the reservation In short, it is clear that the commonly understood definition of "minerals" includes chromite (and other like minerals) and the right to such materials is "what is" reserved in the reservation.

It is also clear that the reservation expressly reserves the right to destroy the surface to access the reserved minerals. The reserves rights to the minerals "on, in and under the real property...together with the right of ingress and egress for the purpose of exploring for, mining, and producing any and all such oil gas and minerals." (18-14, ex. Q, p. 316). The language "on, in and under" the subject property clearly reserves all minerals at whatever location and depth on the property. There is no other way to read the reservation in accordance with the generally accepted meaning of its terms. Further, the Oregon Supreme Court has held that unless the conveyance instrument expressly provides to the contrary–which is not the case here, "a mineral owner or lessee can make any use of the surface of the land which is reasonably necessary to develop minerals. Yaquina Bay Timber & Logging Co. v. Sniny Rock Mining Corp., 276 Or. 779, 784 n. 3 (1976) (internal quotations omitted). I find that the language of the reservation expressly allows any use of

the surface to explore for, mine and produce "any and all...minerals." Thus, Kimberly-Clark holds a reserved right to extract minerals through surface mining (or to lease such rights to a third party).

The reservation is clear, so I need not consider extrinsic evidence. Yogman, 325 Or. at 364. However, assuming arguendo that the reservation was ambiguous, the extrinsic evidence establishes that the parties intended for Scott Paper to retain the rights to all minerals, including those that need to be surface mined. The record shows that Georgia-Pacific conveyed its surface estate in the subject property to the County as part of a like-kind exchange. A basic term of the exchange was that the parties would exchange property of equal value. During negotiations, Georgia-Pacific told the party that it had no mineral interests to convey and it appraised the property based solely on the value of the standing timber plus a small "bare land" value. (#18, p. 25, n. 72). Georgia-Pacific attributed no value to any mineral mining potential, despite a mining company having taken mineral lease options on surrounding land tracts ten years before and confirming (through exploratory drilling) that heavy mineral deposits likely extended under the subject property. (#18-1, ex. A, p. 8). Georgia-Pacific's representation that it had no mineral rights to convey and its failure to assign value to any mineral mining potential indicates that Georgia-Pacific did not own any mineral rights on or under the subject property.

Finally, even if the reservation's clear language or the extrinsic evidence had not resolved the parties' intent regarding the 1963 deed reservation, I would not be persuaded by the County's ejusdem generis argument. The County urges me to "apply the maxim of ejusdem generis and find that [the] 1963 Deed only reserved minerals which are similar in nature to oil and gas." (#14, p. 13). Latin for "of the same kind," the rule of ejusdem generis states that where general words follow an enumeration of specific items, the general words are read as applying only to other items akin to

Page 7 - OPINION AND ORDER

those specifically enumerated. Harrison v. PPG Indus., 446 U.S. 578, 588 (1980). Here, the language "all oil, gas and mineral rights..." does not precede a more general clause. In short, the rule of ejusdem generis is not helpful here as the rights reserved–oil, gas and mineral, are specifically reserved.[2]

### Conclusion

For all these reasons, I find that the term "minerals" in the reservation is clear and includes, but is not limited to, heavy minerals such as chromite. I further find that the reservation expressly allows destruction of the surface, including but not limited to surface mining, to access the reserved minerals. I deny the County's motion for summary judgment (#13) and grant Kimberly-Clark's (#17). This matter is dismissed. The Clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED.

DATED this 5t day of March 2012.

THOMAS M. COFFIN
United States Magistrate Judge

---

[2] I observe that, in its briefing, the County did not offer examples of minerals which were oil and gas like. At oral argument, the County suggested that Sulfur is a mineral similar in nature to oil and gas. Sulfur, like other minerals, has a crystalline structure. See http://webmineral.com/data/Sulfur.shtml (describing Sulfur as having "uniformly indistinguishable crystals forming large masses) It is true that Sulfur can have more than one form; specifically its gas form is sulfur dioxide. Many elements, however, can have more than one form. For example, water may be a liquid, solid (ice) or gas (steam), but it would lead to an absurd result to construe an oil and gas reservation to have reserved all water rights simply because water can exist as a gas. It is similarly absurd to ignore the specific reservations of rights here–oil, gas and mineral, because some elements which are commonly described as minerals can also exist in gas or liquid states.

Page 8 - OPINION AND ORDER